**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-cv-60574-BLOOM/Valle**

MARTHA RODRIGUEZ,

      Plaintiff,

v.

OCWEN FINANCIAL CORPORATION,
AMERICAN HOME MORTGAGE SERVICING, INC.,
and ARK LOAN SOLUTIONS, LLC.,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss Amended Complaint with Prejudice, ECF No. [22] (the "Motion"), filed by Defendant Ocwen Financial Corporation ("Ocwen") and Defendant Homeward Residential, Inc. ("Homeward," formerly American Home Mortgage Servicing, Inc.) and joined by Defendant Ark Loan Solutions ("Ark") (collectively, "Defendants"). The Court has reviewed the Motion, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## I.    BACKGROUND

On April 6, 2017, Plaintiff Martha Rodriguez ("Plaintiff), proceeding *pro se*, filed an Amended Complaint against Defendants, the various loan servicers of her foreclosed mortgage, based on a series of loan modification applications she submitted after a final judgment of

foreclosure was entered against her.[1]   The Amended Complaint alleges the following claims for relief against all Defendants: violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.* ("RESPA"), and its implementing regulation 12 C.F.R. § 1024, *et. seq.* ("Regulation X") (Count I); violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") (Count II); and judicial review of Plaintiff's loan modification applications pursuant to RESPA (Count III).  ECF No. [7].

Plaintiff is a citizen of Florida who, along with her husband, owned a home in Pembroke Pines, Florida beginning in May of 2005.  *See id.* at ¶¶ 9, 15.  At some point, Plaintiff and her husband apparently failed to make their mortgage payments, and Homeward and Ark—the servicers of the mortgage—filed a foreclosure lawsuit against them in state court on September 23, 2008.[2]  *See id.* at ¶¶ 4, 9, 11.  On October 15, 2012, the state court entered a final judgment of foreclosure against Plaintiff and her husband.  *Id.* at ¶ 15.  A foreclosure sale was ultimately scheduled for January 28, 2015.  *See id.* at ¶ 28.

The Amended Complaint alleges that on December 12, 2014, before the scheduled sale, Plaintiff "submitted her first package for a loan modification."  *Id.* at ¶ 16.  The Amended Complaint also alleges that Plaintiff submitted additional loan modification applications in 2015 and 2016, with the last having been submitted on March 24, 2016.  *Id.* at ¶¶ 16, 22(g).  Regarding these loan modification applications, Plaintiff attached to her initial Complaint exhibits that include copies of two loan modification applications that are signed by her and that identify Ark as the loan servicer—one dated July 2, 2014 and the other dated November 11, 2014.  *See* ECF No. [1-2] at 1-3, 8-9.  Regarding receipt, the exhibits reflect that Ark received a

---

[1] Shortly thereafter, on June 7, 2017, Plaintiff filed a Chapter 13 bankruptcy petition in the bankruptcy court of this district.  *See* ECF No. [22-1].

[2] According to the Amended Complaint, Homeward was acquired by Ocwen on October 3, 2012, and so "after October 3, 2012 Ocwen [] became responsible for the Loans that were under the control of [Homeward]."  *Id.* at ¶ 14.

delivery from Plaintiff via certified mail on December 12, 2014. *See id.* at 7. Plaintiff "did not receive from the loan servicer any notification indicating her [sic] that her loss mitigation packages were denied and that she had the right to appeal the decisions . . . ."[3] ECF No. [7] at ¶ 29. As reflected in the Amended Complaint, "Defendants" never submitted a loss mitigation offer to Plaintiff and the foreclosure sale proceeded. *Id.* at ¶ 38.

Plaintiff's RESPA claim in Count I asserts that Defendants violated their obligations under 12 C.F.R. § 1024.41 by (1) not evaluating her for all loss mitigation options available "despite the fact that she [was] qualified for a loan modification"; (2) failing to provide her a notice indicating that her loan modification applications were denied and that she had the right to appeal the denials; and (3) "intentionally postpon[ing] the evaluation of her loan modification packages for more than 2 years" despite having 30 days from receipt to conduct the evaluation. *Id.* at ¶¶ 26-30. Plaintiff's FDUTPA claim in Count II, in essence, asserts that the above mentioned conduct by Defendants also constitutes unfair competition or deceptive practices in violation of FDUTPA. *See id.* at ¶¶ 33, 35. Finally, Plaintiff's "judicial review" claim in Count III requests a "review of [] Plaintiff's loan modification case[,]" asserting that Defendants have "without explanation [] refus[ed] to give the Plaintiff a chance to save her home" despite Plaintiff's qualification for a loan modification and that Plaintiff "deserves to know the grounds in which Defendants based their decision to deny her loan modification packages and decided to sell her home." *Id.* at ¶¶ 37-38, 40. In addition to the injunctive relief requested in Count III, Plaintiff seeks statutory damages under RESPA and FDUTPA, as well as punitive damages.

Defendants move to dismiss the Amended Complaint in its entirety and advance three supporting arguments: (1) Plaintiff now lacks standing because since filing this lawsuit she has filed for bankruptcy, and thus, her claims are now the property of the bankruptcy estate; (2) each

---

[3] The terms "loss mitigation" and "loan modification" will be used interchangeably throughout this Order.

of Plaintiff's claims fails to state a claim under which relief can be granted; and (3) the Amended

Complaint is a shotgun pleading that fails to delineate the facts and counts against each party.

*See* ECF No. [22].

## II.   **LEGAL STANDARD**

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement

of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a

complaint "does not need detailed factual allegations," it must provide "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint may not rest

on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "Factual allegations must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  These elements

are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, which requests dismissal for "failure to state a claim upon which relief can be

granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the

plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in

favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration*

*Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp.,*

*LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal

conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual

allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

The Court employs "less stringent standards" in assessing *pro se* pleadings, such as Plaintiff's Amended Complaint in this case. *See Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 F. App'x 274, 276-77 (11th Cir. 2008) (quoting *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976)). However, the Court may not act as counsel for a party or rewrite deficient pleadings, and *pro se* litigants must still adhere to well-established pleading standards. *See id.* (citing *McNeil v. United* States, 508 U.S. 106, 113 (1993) and *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.   DISCUSSION

### A.  Standing

As a threshold matter, the Court finds that, contrary to Defendants' position, *see* ECF No. [22] at 3 (citing *Davy v. Star Packaging Corp.*, 517 F. App'x 874 (11th Cir. 2013) and *Parker v.*

*Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004)), Plaintiff's filing of a bankruptcy petition after the commencement of this lawsuit does not strip her of standing to pursue her claims. This is so because Plaintiff's bankruptcy petition was filed under Chapter 13, as opposed to Chapter 7, of the United States Bankruptcy Code. *See* ECF No. [22-1].

By way of background, the filing of a bankruptcy petition creates a bankruptcy estate, which is comprised of a range of tangible and intangible property interests. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 343 (4th Cir. 2013) (citing 11 U.S.C. §§ 301, 541(a)). Those interests include non-bankruptcy causes of action stemming from events that occurred prior to the filing of the bankruptcy petition. *Id.* With respect to these non-bankruptcy causes of action, the bankruptcy trustee—as representative of the estate—generally "has capacity to sue and be sued[,]" 11 U.S.C. §§ 323(a)-(b), but the Bankruptcy Code is silent as to the debtor's capacity to maintain such causes of action. In addressing that silence, federal courts have drawn a distinction between Chapter 7 debtors and Chapter 13 debtors—"who, unlike the Chapter 7 debtor, retain[] possession of the bankruptcy estate[.]" *Wilson*, 717 F.3d at 343 (collecting cases). "[U]nlike a Chapter 7 debtor, a Chapter 13 debtor possesses standing—concurrent with that of the trustee—to maintain a non-bankruptcy cause of action on behalf of the estate." *Id.*; *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004) ("Additionally, because Crosby filed under Chapter 13 of the Bankruptcy Code, he retains standing to pursue legal claims on behalf of the estate."); *Pavlov v. Ingles Markets, Inc.*, 236 F. App'x 549, 549 (11th Cir. 2007) ("As a debtor in a Chapter 13 bankruptcy, Velimir Pavlov retains standing to pursue legal claims.") (citing *Crosby*, 394 F.3d at 1331 n.2).

The cases Defendants cite to in support of their argument that Plaintiff lacks standing involved Chapter 7 debtors, and are therefore inapposite. *See, e.g.*, *Parker*, 365 F.3d at 1272

("Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it."). In this case, Plaintiff, as a Chapter 13 debtor, retains standing to pursue the legal claims asserted in her Amended Complaint.

### B. RESPA Claim (Count I)

The Real Estate Settlement Procedures Act "is a consumer protection statute that regulates the real estate settlement process." *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (citing 12 U.S.C. § 2601(a)). As part of that process, Regulation X provides "a comprehensive set of interrelated requirements and deadlines that servicers must comply with when a borrower submits a loss mitigation application." *Paz v. Seterus, Inc.*, 2016 WL 3948053, at *2 (S.D. Fla. April 28, 2016) (citing 12 C.F.R. § 1024.41). The purpose of these prescribed procedures is "to ensure that, before a borrower with a federally related loan loses her home to foreclosure, she is afforded a reasonable opportunity to seek alternatives through a loss mitigation application submitted for the servicer's review." *Id.* If a borrower claims to be harmed by a servicer's violation of Regulation X—as Plaintiff has—she is expressly authorized to bring a private right of action. *See* 12 U.S.C. § 2605(f).

As a preliminary matter, with respect to the particular loan modification applications allegedly submitted by Plaintiff, the Amended Complaint (including the incorporated exhibits attached to the initial Complaint) references three in total. *See* ECF No. [7] at ¶¶ 16, 22(g); *see also* ECF No. [37] at 5 (identifying three applications). The Court notes, however, that the Amended Complaint appears to identify the specific date of receipt as to only one of those applications. Specifically, the Amended Complaint reflects that Ark received what the Court presumes to be a loan modification application from Plaintiff on December 12, 2014. *See* ECF

No. [7] at ¶ 16; ECF No. [1-2] at 7. Relatedly, only one scheduled foreclosure sale date is identified in the Amended Compliant—January 28, 2015. ECF No. [7] at ¶ 8. For purposes of analyzing Plaintiff's RESPA claim in Count I, the Court will consider only the December 12, 2014 application and the January 28, 2015 foreclosure sale, as the parameters of a loan servicer's duties under Regulation X are dependent upon the timing of the receipt of an application in relation to the date of the impending foreclosure sale. *See generally* 12 C.F.R. §§ 1024.41(b), (c). For example, the timing of receipt in relation to the foreclosure sale date dictates how loan servicers are to treat incomplete loan modification applications that they receive. In this case, the relevant time consideration is that Plaintiff's December 12, 2014 loan modification application was received by Ark at least 45 days before the scheduled foreclosure sale.

In seeking dismissal of Plaintiff's RESPA claim in Count I based on a failure to state a claim, Defendants offer two primary arguments. First, Defendants construe Count I as asserting a violation of RESPA based solely on "the failure to offer [Plaintiff] a loan modification . . . ." ECF No. [22] at 5. If accurate, Defendants' construction of Count I is dispositive, because Regulation X specifically states that "[n]othing in section 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a); *see Byers v. Ditech Fin. LLC*, 2016 WL 8814359, at *14 (N.D. Ga. Nov. 14, 2016) (addressing 12 C.F.R. § 1024.41(a) and explaining that, "[i]n other words, while Plaintiff alleges that Defendant denied his modification applications, Regulation X does not require Defendant to do otherwise. Plaintiff does not allege any facts that show a violation of Defendant's more limited responsibilities under Regulation X, which did not include a specific obligation to actually modify the loan."). Second, Defendants challenge the Amended Complaint's claim that they failed to provide notifications as to the denial of any of Plaintiff's loss mitigation applications

and Plaintiff's right to appeal by arguing that "Plaintiff failed to demonstrate that she completed a 'complete loss mitigation package' so as to trigger any such notification of a denial or the right to appeal." *Id.* at 6 (quoting 12 C.F.R. § 1024.41(b)). On the latter point, Defendants are correct.

With respect to Defendants' construction of Count I, although Plaintiff claims throughout the Amended Complaint that she was entitled to loan modification and that the denials of her applications were unjustified, the Amended Complaint alleges RESPA violations. Thus, under Count I, the claims are based on separate, "more limited responsibilities" under Regulation X— namely, a loan servicer's obligations to evaluate a loan modification application within 30 days of receipt and to notify the applicant of a denial and the right to appeal. *Byers*, 2016 WL 8814359, at *14; *see* ECF No. [7] at ¶¶ 28-30 (citing 12 C.F.R. § 1024.41(c)(1)). That said, both of those obligations are only owed to loan modification applications that can be considered complete. *See Paz*, 2016 WL 3948053, at *5 ("[T]he procedures mandated by paragraph (c)(1) only apply 'if a servicer receives a *complete* loss mitigation application ....'") (quoting 12 C.F.R. § 1024.41(c)(1)) (emphasis in original). Problematically, Plaintiff does not allege that Defendants ever received from her a loss mitigation application that was complete, or alternatively, a loss mitigation application that should be considered "facially complete" for purposes of Regulation X based on Defendants' handling of the application. *Cf. Paz v. Seterus, Inc.*, 2015 WL 4389521, at *3 (S.D. Fla. July 16, 2015) ("[T]he Court rejects Defendant's argument that it had no obligation to respond to an incomplete application; Plaintiff's allegation that the application submitted was 'facially complete' under § 1024(c) is sufficient at [the motion to dismiss] stage.") (referring to 12 C.F.R. § 1024.41(c)(2)(iv)); *see also Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1184 (S.D. Fla. 2015) ("[T]he language of 12 C.F.R. §

1024.41 imposes duties upon a servicer when it receives a 'complete' or 'facially complete' application.") (citing 12 C.F.R. §§ 1024.41(c), (g)).

A "complete" loss mitigation application is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).[4] If a servicer receives an application 45 days or more before a foreclosure sale, as in this case, 12 C.F.R. § 1024.41(b)(2) requires that the servicer "notify[] the borrower, in writing, within 5 days . . . that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete." 12 C.F.R. § 1024.41(b)(2)(i)(B). If the application is incomplete, "the servicer must notify the borrower within five days that additional documents and information are required to complete the application." *Paz*, 2015 WL 4389521, at *2 (citing 12 C.F.R. § 1024.41(b)(2)(i)(B)). "If a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete." 12 C.F.R. § 1024.41(c)(2)(iv). Whether complete or facially complete, so long as it is such and received more than 37 days before the foreclosure sale, 12 C.F.R. § 1024.41(c)(1)—under which Plaintiff brings her RESPA claim—mandates that the servicer evaluate the application and notify the borrower in writing within thirty days of which loss mitigation options, if any, it will offer and of the applicant's right to appeal. *See Paz*, 2015 WL 4389521, at *2 (explaining that 12 C.F.R. § 1024.41(c)(1)'s requirement concerning complete applications applies equally to facially complete applications under 12 C.F.R. § 1024.41(c)(2)(iv)). However, the application must be

---

[4] "A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." *Id.*

either complete or facially complete to trigger a servicer's evaluation and notification duties under 12 C.F.R. § 1024.41(c)(1).  *See Lage*, 145 F. Supp. 3d at 1184; *Paz*, 2016 WL 3948053, at *5.  By contrast, "if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation application remains incomplete for a significant period of time under the circumstances *without further progress by a borrower to make the loss mitigation application complete*," a servicer's evaluation duty is discretionary.  12 C.F.R. § 1024.41(c)(2)(ii) (emphasis added) (providing that in such a scenario, "a servicer may, in its discretion, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option").

Here, as mentioned, it appears that Ark received Plaintiff's application at least 45 days before the scheduled foreclosure sale.  As such, Ark was required under 12 C.F.R. § 1024.41(b)(2)(i)(B) to provide a notification to Plaintiff within five days acknowledging receipt of the application and informing Plaintiff whether the application was complete or incomplete.  If the application was incomplete, Ark would have been further required to advise Plaintiff as to what additional documents or information was required to complete the application.  *Id.* Critically, however, the Amended Complaint offers no factual allegations concerning the initial notice Ark presumably sent to Plaintiff as required by 12 C.F.R. § 1024.41(b)(2)(i)(B), let alone the contents of that notice.[5]

Whatever the contents of Ark's notice were, they are critical to Plaintiff's RESPA claim. If the notice informed Plaintiff that her application was incomplete, then the onus would have been on Plaintiff to complete the application by submitting the required materials; in effect, whether the mandatory evaluation duties under 12 C.F.R. § 1024.41(c)(1) were ever triggered

---

[5] To be sure, Plaintiff does not allege that Defendants failed to provide the initial notice required under 12 C.F.R. § 1024.41(b)(2)(i)(B).

would have been dependent on the actions of Plaintiff. For example, Plaintiff may have timely submitted any further materials requested in the notice, in which case her application would be deemed facially complete. *See* 12 C.F.R. § 1024.41(c)(1). Conversely, Plaintiff may have failed to timely submit any further materials requested in the notice, in which case her application would have remained incomplete. *See* 12 C.F.R. § 1024.41(c)(2)(ii). In the latter scenario, Ark would have had the discretion—but not the duty—to evaluate Plaintiff's application. *See* 12 C.F.R. § 1024.41(c)(2)(ii). Of course, the notice could have informed Plaintiff that her application was complete upon submission, or the notice could have simply not requested any further documents or information at all. In either case, the mandatory evaluation duties under 12 C.F.R. § 1024.41(c)(1) would have been triggered.

Plaintiff fails to include any allegations regarding the initial notice owed by Ark. Plaintiff instead asserts only conclusory allegation that Defendants failed to evaluate her loan modification application within 30 days of receipt and failed to notify her of her right to appeal the denial. *See* ECF No. [7] at ¶¶ 28-30. This puts the cart before the horse. Without any indication as to the status of Plaintiff's application—the threshold inquiry—there is no way to know whether Ark ever had the evaluation and notification duties Plaintiff claims to have been violated in the first place. *Cf. Paz*, 2015 WL 4389521, at *1, *3 (rejecting the defendant's argument that its three-month delay in responding to the plaintiff's loan modification application could not provide a basis for a RESPA violation because the application was incomplete, reasoning that the defendant was required to either notify the plaintiff of any further information that was needed or treat the application as facially complete, and finding sufficient the plaintiff's specific allegation that the application was "facially complete"). The omission is dispositive.

In short, because the specific Regulation X duties underpinning Plaintiff's RESPA claim in Count I apply only to loan modification applications that are complete or facially complete, Plaintiff's failure to allege same renders her claim deficient. Accordingly, Count I is dismissed without prejudice, and with leave to amend. Should Plaintiff seek to reassert her RESPA claim in any amended version of her Amended Complaint, she would be well-advised to allege specific facts that relate to the status of any loan modification applications that she submitted—including the attachment of any initial notice or notices she received from any of the Defendants, and any actions (or inactions) by any of the parties thereafter. The Court notes that Plaintiff's Amended Complaint refers to an Exhibit 1, S*ee* ECF No. [7] at 10, but Plaintiff fails to attached same to her pleading. Additionally, Defendants correctly point out that, with respect to the various loan modification applications Plaintiff allegedly submitted, the Amended Complaint "fails to specify which dates which documents were sent, which defendant received which documents, [and] what each defendants' responses were . . . ." ECF No. [22] at 3. Any amended version of the Amended Complaint should therefore allege with specificity which Defendants are responsible for each alleged RESPA violation.

## C. FDUTPA Claim (Count II)

Defendants seek dismissal of Count II on the basis that the failure to provide Plaintiff a loan modification, even if improper, is not a practice in the course of "trade or commerce" so as to fall within the scope of FDUTPA. ECF No. [22] at 8-9. Defendants are correct.

Florida's Unfair and Deceptive Trade Practices Act declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Fla. Stat. § 501.204(1). "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the

13

circumstances, to the consumer's detriment.'" *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). "To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages. *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

Defendants correctly point out that courts have often found that activities related to mortgage or loan servicing does not satisfy the "trade or commerce" requirement. *See, e.g.*, *id.* at *4-*5 (finding that even if the loan servicer defendant engaged in deceptive acts or unfair trade practices, its actions—"merely obtain[ing] a legal interest in a mortgage note from a third party lender and proceed[ing] to take efforts to enforce the terms of that mortgage"—did not qualify as trade or commerce under FDUTPA) (citing *Trent v. Mortgage Electronic Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007)); *Trent*, 618 F. Supp. 2d at 1365 (finding that the loan servicer defendant did not "advertise, solicit, provide, offer or distribute" anything directly to the plaintiffs). "Trade or commerce" is defined by FDUTPA in relevant part as follows: "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

Consistent with the Southern District of Florida in *Benjamin* and the Middle District of Florida in *Trent*, the Court finds that even if Defendants denied Plaintiff's loan modification application without justification and even if Defendants' conduct in doing so constituted deceptive acts or unfair trade practices, their actions as loan servicers do not qualify as "trade or commerce" under FDUTPA. To this, Plaintiff states that loan servicing and loss mitigation

processes are not the same thing, and therefore "any decision issued by the courts in regards to loan servicing . . . is not related to loss mitigation processes."  ECF No. [37] at 10-11.  This is simply not correct.  As illustrated by the requirements promulgated in Regulation X, loss mitigation is part and parcel of loan servicing.  Indeed, like the defendant loan servicer in *Benjamin*, which "proceeded to take efforts to enforce the terms of [the] mortgage[,]" Defendants in this case sought to enforce the terms of Plaintiff's mortgage.  2013 WL 1891284, at *5.  The loss mitigation process that ensued stemmed directly from that enforcement.  As with mortgage enforcement generally, a loan servicer's handling of a loss mitigation application— obligatory and reactive in nature—does not involve the loan servicer "advertising, soliciting, providing, offering, or distributing" anything to borrowers.  Fla. Stat. § 501.203(8); *see Benjamin*, 2013 WL 1891284, at *5 ("In this case, . . . the loan servicer did not 'advertise, solicit, provide, offer or distribute' anything to the plaintiffs.").  As such, because none of Defendants' loan modification activities fall within the purview of trade or commerce as contemplated in FDUTPA, Count II is dismissed with prejudice.

### D.  Injunctive Relief (Count III)

Couched as a claim seeking "judicial review" of Plaintiff's loan modification process, Count III cites to Regulation X and appears to seek an order that would require Defendants to provide an explanation as to "the grounds in which the Defendants based their decision to deny [Plaintiff's] loan modification packages and [] to sell her home."  ECF No. [7] at ¶¶ 36-41.  However, nothing in RESPA or Regulation X provides for this particular injunctive relief.  Indeed, even on a more general level, federal courts have routinely held that RESPA does not provide for any injunctive relief whatsoever.  *See, e.g.*, *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1013 (N.D. Cal. 2012) ("RESPA does not provide for injunctive relief[.]");

*Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 796 (D. Md. 2009) ("there is no private right to injunctive relief under RESPA"); *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 334 (M.D.N.C. 2002) (holding that an injunction is unavailable in RESPA private actions); *Beltz v. CitiMortgage, Inc.*, 2015 WL 12964644, at \*2 n.1 (N.D. Ga. Sept. 11, 2015) ("The courts that have considered whether RESPA provides for injunctive relief have generally held that it does not.") (collecting cases); *Malally v. BAC Home Loan Servicing, LLC*, 2010 WL 5140626, at \*9 n.13 (N.D. Ga. Oct. 8, 2010) ("RESPA provides for neither equitable nor injunctive relief, including relief from foreclosure."), *report and recommendation adopted*, 2010 WL 5140031 (N.D. Ga. Dec. 13, 2010). To the extent that Plaintiff claims under Count III that she "is qualified to obtain loan modification" and that the denial of her application "is not acceptable[,]" ECF No. [7] at ¶ 37, the language of Regulation X provides a strong indication that any equitable or injunctive relief aimed at curing an improper denial of a loan modification application is unavailable: "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a); *see also, e.g.*, *Clark v. Ocwen Loan Servicing, LLC*, 2015 WL 6159447, at \*6 (W.D. Mich. October 20, 2015) (agreeing with the defendant "that RESPA does not permit the Court to issue an order to set aside the foreclosure sale or to require Ocwen to review [the plaintiff's] eligibility for a modification to his loan").

In accordance with the above mentioned cases, the Court concludes that there is no private right to injunctive relief under RESPA. Count III is therefore dismissed with prejudice.

## IV. CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint with Prejudice, **ECF No. [22]**, is **GRANTED in part and DENIED in part**.

2. Count I is **DISMISSED without prejudice**.

3. Counts II and III are **DISMISSED with prejudice**.

4. Plaintiff is granted leave to amend and is directed to file a Second Amended Complaint on or before **August 30, 2017**.

**DONE AND ORDERED** in Miami, Florida, this 21st day of August, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record